IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


**RAYMOND DUARTE,**
    **Plaintiff,**

**v.**                                                                                          CIV. No. 00-1158 JP/WWD

**HONEYWELL FEDERAL**
**MANUFACTURING &**
**TECHNOLOGIES, LLC.**
    **Defendant.**


### MEMORANDUM OPINION AND ORDER

On July 9, 2001, Defendant Honeywell Federal Manufacturing & Technologies, LLC, filed a Motion for Summary Judgment (Doc. No.22). After a careful review of the briefs and the relevant law, I have determined that the motion should be denied as to Plaintiff's Title VII retaliatory discrimination claim. I have also concluded, based on information provided at the August 15, 2001 pretrial conference, that Defendant's motion should be granted as to Plaintiff's breach of contract claim.

**I.**    **Background**

In 1985, the Plaintiff, Raymond Duarte, began working for the Defendant employer[1] as an associate engineer at the company's Kansas City plant. Plaintiff received promotions over the next several years, and by 1996, he held the position of Staff Engineer. In October 1997, Plaintiff

---

[1] When Plaintiff started working in Kansas City, Bendix Corp. operated the plant. After AlliedSignal, Inc. succeeded Bendix, Plaintiff's employer was Allied Signal Federal Manufacturing and Technologies. AlliedSignal, Inc. merged with Honeywell, Inc. after Plaintiff was fired in May 1999. Allied Signal Federal Manufacturing and Technologies became known as Honeywell Federal Manufacturing and Technologies.

transferred to Defendant's Kirtland Air Force Base location to work as a Quality Engineer. Defendant fired Plaintiff in May 1999.  Plaintiff and Defendant offer very different versions of the events leading to Plaintiff's dismissal.

Beginning with his transfer to Albuquerque, Plaintiff's supervisor was Jennifer Valverde. Plaintiff contends that soon after his transfer, Ms. Valverde made sexual advances toward him. He alleges that on one occasion, Ms. Valverde stated to him that she could not bear children, in a manner suggesting that she wanted to initiate a sexual relationship.  Plaintiff maintains that he rejected Ms. Valverde's advance.  Plaintiff also alleges that Ms. Valverde often told sexually-explicit jokes and made sexual comments in the workplace.  According to Plaintiff, Ms. Valverde had a reputation for dating coworkers and customers.  Plaintiff maintains that he complained to Ms. Valverde about her sexually-explicit remarks, and that Ms. Valverde retaliated against Plaintiff because he rejected her advances.  Ms. Valverde denied Plaintiff permission to work on a flex-time schedule, gave Plaintiff poor performance evaluations, and excluded Plaintiff from meetings.

In December 1998, Plaintiff anonymously called the Defendant's corporate hotline and complained about Ms. Valverde's conduct.  He claims that he did not observe any evidence that the company was responding to his report.  In March 1999, Plaintiff filed charges of discrimination with the EEOC and the New Mexico Human Rights Commission.  In response, Defendant initiated an investigation of Plaintiff's charges.  Plaintiff argues that this investigation was not fair and impartial, because it was conducted by Ms. Valverde's friends and because it actually focused on the Plaintiff's conduct, instead of Ms. Valverde's.  Plaintiff denies that he himself engaged in any inappropriate behavior toward female coworkers.

Defendant takes the position that problems with Plaintiff's performance and conduct in the workplace emerged soon after his transfer to Albuquerque. A month after Plaintiff arrived, Defendant alleges, Ms. Valverde counseled him that he needed to follow her directions. Plaintiff's 1997 performance evaluation also reflected that he had failed to meet certain goals and had difficulties in planning and communicating. In June 1998, Ms. Valverde reported in a memorandum to human resources department personnel that Plaintiff had expressed an interest in beginning a romantic relationship with her. Plaintiff's 1998 performance evaluation again showed problems in his work.

Defendant maintains that after Plaintiff's anonymous calls to the corporate hotline, the company investigated the caller's allegations, but found no corroborating information. When Defendant learned of Plaintiff's EEOC charge in March 1999, the company again began an investigation. Defendant reached the conclusion that Plaintiff's accusations were unfounded, and that Plaintiff himself had engaged in inappropriate conduct in the workplace. The company representatives carrying out the investigation– Dennis Cummings, a Vice President, Carol Shields, a human resources manager, and Sherry Ward, a human resources generalist– learned that Plaintiff had made sexual advances toward female coworkers, both in Kansas City and Albuquerque. The investigators also reviewed a February 1999 incident in which Plaintiff, who had been teaching a shop math class, told coworkers that a student had been cheating. The investigators formed the belief that the Plaintiff had a pattern of accusing other people of misconduct when he himself took part in inappropriate behavior. On April 26, 1999, Defendant convened a Separation Committee. The Committee concluded that the Plaintiff should be fired. In a memorandum of May 5, 1999, Dennis Cummings notified Plaintiff of his termination. Mr.

Cummings cited the following grounds as reasons supporting Plaintiff's dismissal:

> (1) repeated inappropriate, uninvited and unwelcome advances toward women in the workplace (even after having been counseled against such advances); (2) retaliatory dissemination of false and malicious information about fellow associates to other associates; and (3) provision of false statements to senior management in the course of a company investigation.

Deft. Exh. B.

On August 9, 2000, Plaintiff filed his Complaint, alleging retaliatory discrimination under Title VII, 42 U.S.C. § 2000e-3(a), and breach of contract. On July 9, 2001, Defendant filed a Motion for Summary Judgment (Doc. No. 23).

## II.     Legal Standard

A court should grant summary judgment only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Supreme Court has observed that a genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Initially, the moving party carries the burden of establishing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the party opposing the motion, who must come forward with evidence, beyond mere allegations or denials of the pleadings, which shows that a genuine issue of material fact exists. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). In deciding a motion for summary judgment, courts should "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc*, 912 F.2d 1238, 1241 (10th Cir. 1990).

**III.    Retaliation Claim**

The burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), applies to retaliatory discrimination claims brought under Title VII. *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000). Plaintiffs must first set forth a prima facie case of retaliation, by showing that "(1) he or she was engaged in opposition to Title VII discrimination; (2) he or she was subjected to adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262-63 (10th Cir. 1998). If the plaintiff satisfies these elements, the burden shifts to the defendant to provide a legitimate, non-discriminatory explanation for the adverse employment action. *Pastran*, 210 F.3d at 1206. If the defendant succeeds, "[t]he plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Id.*

Defendant does not appear to dispute that the Plaintiff has satisfied the first two elements of a prima facie retaliation case, noting that "Plaintiff can establish that he engaged in protected activity by filing a charge of discrimination and that his employment was later terminated." See Memorandum Brief in Support of Motion for Summary Judgment (Doc. No. 24), at 12. However, Defendant argues that the Plaintiff has failed to show a causal connection between his protected activity and the adverse employment action that he suffered. In Title VII retaliation cases, "[t]he causal connection may be shown by producing 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999), quoting *Burrus v. United Tel. Co. of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir. 1982).

Here, the circumstances surrounding Plaintiff's filing of EEOC charges and the timing of subsequent events support an inference of retaliation. The Plaintiff filed his claim of discrimination with the EEOC on March 6, 1999, and the Defendant apparently learned of the claim on March 26, 1999.  See Deft. Exh. A, Affidavit of Carolyn R. Shields, at 1; Memorandum in Support of Motion for Summary Judgment, at 4.  The Separation Committee rendered its decision to discharge plaintiff on April 26, 2001– within seven or eight weeks after Plaintiff had filed his charge with the EEOC, and a month after the company learned of the charge.  Deft. Exh. A-2, Separation Committee Action document.  The Tenth Circuit has "held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation," while "a three-month period, standing alone, is insufficient to establish causation."  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).  Here, the temporal relationship between Plaintiff's filing of EEOC charges and his firing is likely sufficient to meet the causation requirement at the prima facie stage of analysis.  Further, other circumstances suggest some causal link between Plaintiff's participation in protected activity and Defendant's termination of his employment.  Plaintiff's EEOC claim prompted the investigation through which Defendant discovered the information on which it based its decision to fire Plaintiff.  See Deft. Exh. A-1, Discussion Document for Separation Committee, at 2; Deft. Exh. B, Memorandum of May 5, 1999 from Dennis Cummings.

Defendant contends that in deposition, Plaintiff essentially admitted that his termination was not causally linked to his EEOC claim.  Defendant notes that when asked why he believed he had been fired, Plaintiff cited his rejection of  Ms. Valverde's sexual advances and his appeals of his performance evaluations, but not his filing of EEOC charges.  Deft. Exh. C, Depo. of

Raymond Duarte, at 244-47.  This Court is not persuaded by the Defendant's position that the Plaintiff's failure to explicitly mention his filing of EEOC charges in deposition means that the Plaintiff cannot satisfy the causation element required to state a prima facie case of retaliatory discrimination.  First, in his Complaint, Mr. Duarte points to the temporal proximity between his EEOC claim and his dismissal, and as this Court discussed above, this proximity represents a sufficient showing of causation at this stage of litigation.  Complaint at 4.  Second, the Defendant's argument assumes that in answering "yes" to Mr. Gordon's question of "Is it your allegation that you were terminated in retaliation for refusing the sexual advances of your supervisor?", Plaintiff intended to exclude a claim of retaliation for filing charges over the alleged sexual advances.  Deft. Exh. C, Depo. of Raymond Duarte, at 243.

Because Plaintiff has made a prima facie showing of retaliation, the burden shifts to Defendant to offer a legitimate, non-discriminatory reason for its termination of Plaintiff's employment.  Defendant has met this burden.  Defendant has provided evidence that the Separation Committee had reason to believe that Plaintiff had engaged in serious misconduct, including making unwelcome sexual advances toward female coworkers and making false statements about coworkers.  See, e.g., Deft. Exhs. A-1, A-2.

Given that Defendant has offered a non-discriminatory explanation for Plaintiff's dismissal, Plaintiff must show that the Defendant's proffered reasons are not the true reasons for Defendant's decision, but are merely pretextual.  A plaintiff can demonstrate pretext by pointing to "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'"  *Bullington v. United Air Lines, Inc.*, 186 F.3d at 1317 (10th

Cir. 1999), quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997). This Court finds that the Plaintiff has raised a question of material fact as to whether the Defendant's explanation for Plaintiff's discharge was pretext.

First, as the Plaintiff emphasizes, many of the alleged instances of inappropriate conduct on which the Separation Committee based its firing of Plaintiff were known to company managers prior to the investigation initiated in response to Plaintiff's filing of EEOC charges.[2] A rational jury could find that because the decisionmakers did not move to terminate Plaintiff for his conduct until after he engaged in protected activity, the decisionmakers actually acted out of retaliation. Second, some of Plaintiff's coworkers have testified in deposition that when they were interviewed during the investigation, the investigators' questions seemed to focus on Plaintiff's conduct, rather than on the allegations that Plaintiff had made in his EEOC claim. Pltf. Exh. D, Depo. of Drexel D. Kisner, at 77; Pltf. Exh. E, Depo. of Elisa Bustamente, at 12. A rational jury might conclude that Plaintiff's filing of discrimination charges prompted company officials to formulate perhaps pretextual reasons to terminate the Plaintiff's employment.

Defendant correctly observes that it is not the court's role to evaluate the wisdom of employers' disciplinary decisions. However, as the Ninth Circuit has observed in another context, "Although [defendant's] actions may have an innocent explanation, on summary judgment the only question is whether a rational juror could infer a noninnocent explanation." *Christie v. Iopa*,

---

[2] Defendant learned of Plaintiff's filing of EEOC charges in late March of 1999. The Discussion Document for Separation Commitee, Deft. Exh. A-1, indicates that the incidents examined in the course of the company's subsequent investigation included: 1) Joyce Butler's 1994 complaint that Plaintiff had made inappropriate comments to her while the two were on a business trip; 2) Ms. Valverde's June 1998 report to her supervisor, Linda Holland, that Plaintiff had made a sexual advance toward her; and 3) Freda Colon's complaint, in February 1999, that Plaintiff was spreading rumors that she had cheated on an exam. Deft. Exh. A-1.

176 F.3d 1231, 1240 (9th Cir. 1999), quoted in *Cisneros v. Wilson*, 226 F.3d 1113, 1134 (10th Cir. 2000) (overruled on other grounds).  This Court believes that in this case, the Plaintiff has presented the types of factual questions best considered by a jury.

## IV.    Breach of Contract Claim

In addition to his claim of retaliatory discrimination under Title VII, Plaintiff also alleges a breach of contract claim in his Complaint.  Plaintiff charges that Defendant violated its employment agreement with Plaintiff by waiting ten months to look into Ms. Valverde's report that Plaintiff made a sexual advance toward her and by failing to investigate the complaint that Plaintiff made to the company telephone hotline.  At the pretrial conference held on August 15, this Court asked Plaintiff's counsel, Donald Gilpin, whether the breach of contract claim represented a distinct basis for seeking damages.  Mr. Gilpin stated that it did not.  Mr. Gilpin explained that in a previous employment case in which he had alleged both a Title VII claim and a contract claim, the court collapsed the two theories in instructing the jury.  In light of Mr. Gilpin's statements at the pretrial conference, this Court has determined that the Plaintiff's breach of contract count should be dismissed as an independent claim.

IT IS THEREFORE ORDERED THAT the Defendant's Motion for Summary Judgment is denied, as to the Plaintiff's Title VII retaliation claim and granted as to Plaintiff's breach of contract claim.

_____
CHIEF UNITED STATES DISTRICT JUDGE